

# THE ATTORNEY GENERAL
## OF TEXAS

July 15, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable John Vance
District Attorney
Services Building
Dallas, Texas    75202

Opinion No.   JM-749

Re:  Acceptance of credit cards in payment of fines, fees and other charges

Dear Mr. Vance:

You ask several questions relating to a recently enacted statute which enables county commissioners courts to authorize county officials to accept credit cards for the payment of "a fee, fine, court cost, or other charge. . . ."  V.T.C.S. art. 3910a.  Your questions may be summarized as follows:

> 1.  Whether the acceptance of credit cards by a county constitutes a 'lending of credit' in violation of the Texas Constitution;

> 2.  Whether article 3910a conflicts with provisions of the Texas Code of Criminal Procedure which require that fines and costs be paid in money;

> 3.  Whether the assessment of processing fees and service charges under sections 3 and 5, respectively, of article 3910a is enforceable;

> 4.  Whether article 5069-1.12 prevents the collection of the processing fees authorized by section 3 of article 3910a;

> 5.  Whether article 3910a applies to bail bonds; and

> 6.  Whether the county may indemnify county officials responsible for collecting fines, fees, costs, and other charges by credit card.

Your questions will be addressed in this order.  Your letter indicates that a bank has agreed to make the acceptance of certain credit cards by the county available at no charge to the county.  Consequently, this opinon does not address problems which could arise if the county

actually received less from a defendant who paid by credit card than from a defendant who paid cash.

Article III, section 52, of the Texas Constitution prohibits the legislature from authorizing "any county . . . to lend its credit or to grant public money or [any] thing of value in aid of, or to any individual, association or corporation whatsoever. . . ." See also Tex. Const. art. XI, §3. In Attorney General Opinion JM-522 (1986), this office reiterated that article III, section 52, clearly prohibits the legislature from authorizing county officers to deliver county services on credit. Accordingly, resolution of your first question depends on whether the acceptance of credit cards under article 3910a actually constitutes a "lending of credit."

Section 2(a)(1) of article 3910a authorizes county commissioners courts to authorize county or precinct officers to "accept payment by credit card of a fee, fine, court cost, or other charge. . . ." (Emphasis added). Because this section does not grant authority to issue credit cards, the transaction contemplated by article 3910a is a tripartite arrangement. In the usual tripartite credit transaction, a customer obtains loans from a creditor to purchase goods or services from participating merchants; the creditor pays the participating merchants and the customer is obligated to pay the creditor. See V.T.C.S. art. 5069-15.01, §(1); 1 J. Fonseca, Handling Consumer Credit Cases, §10.2 (3rd ed. 1986). Thus, article 3910a contemplates that the county shall stand in the position of the merchant -- not the creditor. No "lending of credit" by the county occurs. It has been noted that some credit card "sales drafts" may be dishonored and returned to county officials. Although this fact may raise policy concerns, it does not affect the legal question of whether the county has extended its credit.

Your second question suggests that article 3910a conflicts with provisions of the Texas Code of Criminal Procedure which require that fines and costs be paid in money. Article 43.02 of the Code of Criminal Procedure provides:

> All recognizances, bail bonds, and undertakings of any kind, whereby a party becomes bound to pay money to the State, and all fines and forfeitures of a pecuniary character, shall be collected in the lawful money of the United States only. (Emphasis added).

You also note that in Robinson v. State, 29 S.W. 788, 789 (Tex. Crim. App. 1895), the court held that a county sheriff lacks statutory authority to accept checks or promissory notes. The court stated that

> [s]uch officers are not clothed with the authority to thus bind the state by accepting checks, promissory notes, or property of any kind other

> than money, in payment of fines imposed upon parties convicted for violations of the law. (Emphasis added).

29 S.W. at 789. The case is inappposite to the issue at hand. Article 3910a provides express authority to accept credit cards.

The acceptance of credit cards does, however, create some questions about the enforcement of a defendant's obligation to pay costs and fines under article 43.01 of the Code of Criminal Procedure. The credit card transaction authorized by article 3910a is similar in some respects to the situation presented when a check to the county is dishonored. In Attorney General Opinion JM-522, this office determined that a justice of the peace may accept a check as conditional payment of fines, costs, and judgments. Although a check does not constitute money, once it is honored by a bank, it results in the receipt of money. Attorney General Opinion JM-522. If a check is dishonored, it is just as if no payment has been made; the defendant is not discharged from his obligation to pay costs and fines. See Code Crim. Proc. art. 43.01; Attorney General Opinion JM-522. Similar considerations apply to the acceptance of payments made by credit cards under article 3910a. If a defendant refused or failed to pay the obligation to the lending institution and the lending institution refused to pay the county, the defendant's obligation under article 43.01 would not be discharged. In the usual case, however, the lending institution would pay the county, and the lending institution would bear the risk of non-collection. In the unlikely situation that the county is required to collect a credit card obligation from a defendant who refuses or fails to pay the obligation, it follows that certain consumer credit laws could apply to the county's collection efforts. Similarly, in the unusual case where the defendant actually paid the lending institution but the lending institution failed or refused to credit the county with the payment, it could raise serious due process questions and concerns under the consumer credit laws if the county refused to consider the defendant discharged from his obligation to pay costs and fines under article 43.01 of the Code of Criminal Procedure. A discussion of all of the implications of the consumer credit laws on individual cases of nonpayment that conceivably could arise depends on the terms of the particular agreement with a lending institution and is beyond the scope of your opinion request. Consequently, articles 43.01 and 43.03 of the Code of Criminal Procedure are not satisfied until either the defendant pays or the county actually receives money. Article 3910a does not "repeal" these provisions. Article 3910a does, however, create an exception to article 43.02's mandate that all such obligations be collected in money.

You also ask whether the county has any legal recourse for a defendant's failure to pay either the processing fee authorized by section 3 of article 3910a or the service charge authorized by section 5 of article 3910a for dishonored drafts. As a practical matter, it

should be noted that part of a charge draft cannot be dishonored. Consequently, your concern is relevant primarily to the collection of a service charge for dishonored charge drafts. You suggest that such fees and charges must be part of the sentence before an arrest for failure to pay the fee or charge may be effected. The Code of Criminal Procedure provides for the collection of fines and costs. See art. 43.07; see also Attorney General Opinion MW-322 (1981); cf. Gunstanson v. State, 666 S.W.2d 183 (Tex. App. - Dallas 1983, pet. ref'd) (incarceration of a proven indigent for failure to pay immediately a fine or court cost is constitutionally impermissible). In contrast, the county's remedy for a failure to pay a processing fee or a service charge for a dishonored charge draft is a civil matter. See Attorney General Opinion JM-472 (1986).

Another objection raised in your request letter involves article 5069-1.12, V.T.C.S. This statute provides that:

> [i]n a sales transaction for goods or services involving the use of a credit card for an extension of credit, the seller may not impose a surcharge on the buyer because the buyer uses a credit card instead of cash, a check, or similar means of payment.

See also 15 U.S.C. §1666f(a)(2) ("[n]o seller in any sales transaction may impose a surcharge on a cardholder who elects to use a credit card in lieu of payment by cash, check, or similar means.") Article 5069-1.12 appears to be in conflict with sections 2(a)(2) and 3(a) of article 3910a. Section 2(a)(2) enables a commissioners court to authorize the collection of a fee for processing payments made by credit card. Section 3(a) limits the amount of the processing fee.

The Sixty-ninth Legislature enacted both article 3910a and article 5069-1.12. See Acts 1985, 69th Leg., ch. 363, at 1433 (codified as V.T.C.S. art. 3910a); Acts 1985, 69th Leg., ch. 443, §1, at 1578 (codified as V.T.C.S. art. 5069-1.12). The Texas Supreme Court stated the rule of construction applicable to statutes enacted during the same legislative session:

> The rule is, that in the construction of acts of the same session, the whole must be taken and construed as one act, and to make a latter provision repeal a former, there must be an express repeal, or an irreconcilable repugnancy between them; and then the latter will control. . . . [N]othing short of expressions so plain and positive as to force upon the mind an irresistible conviction, or absolute necessity, will justify a court in presuming, that it was the intention of the legislature that their acts passed at the same session, should abrogate and annul one another.

Wright v. Broeter, 196 S.W.2d 82, 85 (Tex. 1946). The legislature approved articles 3910a and 5069-1.12 on May 20 and May 27, 1985, respectively. Thus, if an irreconcilable difference exists between articles 3910a and 5069-1.12, article 5069-1.12 must prevail as the latter enactment.

Articles 3910a and 5069-1.12 are not necessarily irreconcilable. Section 3(a) of article 3910a authorizes a commissioners court to

> set the processing fee in an amount that is reasonably related to the expense incurred by the county or precinct officer in processing the payment by credit card. However, the court may not set the processing fee in an amount that exceeds five percent of the amount of the fee, court cost, or other charge being paid.

Thus, section 3 focuses on assuring that counties incur no additional costs as a consequence of accepting payment by credit cards. Article 5069-1.12 focuses on preventing discrimination by sellers against buyers who use credit cards instead of cash. Such "discrimination" is often simply an attempt by merchants to pass on to consumers the merchants' cost of accepting credit cards. Thus, section 3(a) of article 3910a and article 5069-1.12 address the same basic practice. But article 5069-1.12 applies to sellers in a commercial setting. See also 15 U.S.C. §1666f(a)(2) (applies to sales transactions). Although the county may stand in the position of a seller while accepting credit cards, the county is not in the business of "selling" goods or services. Governing entities cannot logically be compared to businesses -- their function and purpose are different. Article 5069-1.12 was not intended to apply to counties. Article 5069-1.12 therefore does not prevent counties from charging processing fees under sections 2(a)(2) and 3(a) of article 3910a.

You indicate that the Dallas County Commissioners Court contends that bail bonds fall within the meaning of fees, fines, court costs, or other charges in article 3910a. Article 17.01 of the Code of Criminal Procedure defines "bail" as

> the security given by the accused that he will appear and answer before the proper court the accusation brought against him, and includes a bail bond or a personal bond.

Bail constitutes pre-trial security. See Attorney General Opinion JM-363 (1985). In contrast, the "fees, fines, and court costs" covered by article 3910a relate to amounts which are usually imposed only after trial and conviction. Moreover, the area of bail bonds is of significant interest to the public and to bail bondsmen. Consequently, if the legislature had intended article 3910a to include bail, it would have done so expressly.

Finally, you ask whether the county may indemnify county officials responsible for collecting payments by credit card under article 3910a or whether such indemnification is "necessary." Article 3910a does not alter the law applicable to county officials' liability for the collection of fees and fines. See Tex. Const. art. XVI, §61; Code Crim. Proc. art. 103.003; V.T.C.S. arts. 1622; 3912e, §5; 3912k, §5; Attorney General Opinion MW-188 (1980); see also V.T.C.S. art. 3896; Attorney General Opinion JM-517 (1986). Nor does article 3910a change the law with regard to indemnification. See generally Attorney General Opinion MW-156 (1980); see also Attorney General Opinion Nos. JM-153 (1984); H-1318 (1978) (governmental entities may not purchase liability insurance without specific statutory authority). As indicated, if a charge draft is dishonored, it would be as if no payment had been made; the county official must use all legal means to collect the fees, fines, court costs and other charges which may be due. See Attorney General Opinions JM-522; V-201 (1947). The official would not incur a different degree of liability simply because the official accepted payment by credit card. Because of the processing fees and service charges, the amount he must collect may differ. Liability for the collection, however, would not change.

## SUMMARY

Article 3910a, V.T.C.S., which authorizes county commissioners court to authorize county officials to accept payment for fees, fines, court costs, and other charges is a valid and enforceable statute.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General